[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2012
JOHN LEY
CLERK

No. 11-12053
Non-Argument Calendar
_____

D.C. Docket No. 1:07-cv-23016-JAL


ANTHONY B. WILSON,

                                                    Petitioner-Appellant,

versus

DEPARTMENT OF CORRECTIONS,

                                                    Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 2, 2012)

Before TJOFALT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

In *Wilson v. State*, the Florida District Court of Appeal affirmed Anthony

Wilson's convictions for "attempted first degree murder and burglary with a

battery while armed with a knife, in connection with the stabbing of Antron Pope

inside Pope's home." 880 So.2d 1287 (Fla. 3d D.C.A. 2004). After exhausting his

state remedies, Wilson petitioned the U.S. District Court for the Southern District

of Florida for a writ of habeas corpus. 28 U.S.C. § 2254. The district court denied

relief. Wilson appealed, and we issued a certificate of appealability on one issue,

to-wit:

> Whether the district court erroneously applied the deference standard
> under 28 U.S.C. § 2254(d) to Wilson's claim, and, if so, whether the
> district court erred in finding that the prosecutor's questions and
> comments, regarding whether Wilson believed that the other
> witnesses were lying and conspiring against him, did not constitute a
> violation of Wilson's constitutional rights?

As the district court stated in denying habeas relief, the "claim" Wilson presented

was

> whether Wilson was denied a fundamentally fair trial due to alleged
> prosecutorial misconduct during cross-examination and closing
> arguments. Wilson allege[d] that the prosecutor was permitted to ask
> him . . . whether the prosecution's witnesses were lied during their
> testimony and were conspiring against him. The prosecutor later
> made reference to Wilson's belief in the conspiracy against him
> during summation.

Order, March 30. 2011, at 1-2. The relevant portion of the challenged cross-

2

examination was this:

> Q: Now you sat there the whole time and listened to what everybody said?
> A: Yes.
> Q: You heard what Kia said.  That you were harassing Shirley, you were were coming by constantly and wouldn't go away?
> A: I heard everything.
> Q: You heard what Dakeidra said, you were coming to the house and you were harassing Shirley and wanted Shirley back. You heard that?
> A: Yes.
> Q: You heard Antron's testimony, yes?
> A: Yes.
> Q: And you heard today, Shirley's own mother come in here and testify about how you were threatening her daughter and how you were threatening Antron. But they're all lying?
> DEFENSE COUNSEL: Objection. He has to be here during trial.
> THE COURT: No speaking objection. Objection overruled. Talk about it sidebar. Continue.
> DEFENSE COUNSEL: May I have a sidebar? It is improper to ask one witness—
> THE COURT: Stop, stop. That is a speaking objection.
> Q: Do you believe that all these witnesses are conspiring against you?
> A: Well—
> Q: That's what you think, this is a big conspiracy? You've got the officer. You've got Shirley's  mother. You've got Shirley's friend. You got Antron, the exboyfriend.  You got everybody coming in here saying the same thing, but it is because they are conspiring against you?
> DEFENSE COUNSEL: Objection.
> That is argumentative.
> THE COURT: Overruled.
> Q: Yes or no, are they conspiring against you?
> A: Yes.

*Id.* at 2.  And the relevant portion of the challenged jury argument was:

> You have heard from a lot of witnesses. [Wilson] yesterday tells you that its a conspiracy.  Now, we've heard a lot of preposterous things, but that is the ultimate.  To say that Shirley's mother and Antron Pope, his family, his own friend, Dakeidra and Kia all came in here to conspire against him, because of what?  Because it is not true.  There is no conspiracy.  The only thing we're trying to do is achieve the truth, get to justice, ladies and gentlemen.

*Id.* at 3.

We review *de novo* the district court's decision rejecting Wilson's due process claim.  *See* 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a district court must deny habeas relief to a state prisoner on claims that were previously adjudicated on the merits in state court, unless the state court's adjudication: "(1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In this case, the questions we must decide  are whether the Florida District Court of Appeal's decision rejecting the claim the district court set out above "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

The district court of appeal found that the prosecutor's questions on cross-examination "were improper" under Florida law, as announced in *Whitfield v. State*, 549 So.2d 1201 (Fla. 3d DCA 1989), but that the conduct constituted "harmless error beyond a reasonable doubt." *Wilson*, 880 So.2d at 1289. The court did not pass on the propriety of the prosecutor's "conspiracy" comments to the jury because, in the court's reading of the trial transcript, the "conspiracy of witnesses against Wilson was not mentioned during the State's closing argument." *Id.* The court was mistaken; as indicated in the district court's order at 3, the conspiracy was mentioned.

Neither the district court of appeal's decision affirming Wilson's conviction nor the district court's order denying habeas relief cited a Supreme Court decision holding, or even intimating, that asking a defendant on cross-examination whether a prosecution witness lied constitutes a denial of due process of law. The same goes for the prosecutor's conspiracy references closing argument; neither Wilson nor the district court in its Order cites a Supreme Court decision anywhere in point. Nonetheless, we will assume for sake of argument that the Supreme Court would treat the prosecutorial conduct complained of as presenting *prima facie* a due process claim. Further, because the district court of appeal did not pass on the prosecutor's "conspiracy" comments in closing argument, we consider the

5

propriety of the comments *de novo.* And doing so, we ask whether the trial court error—in overruling defense counsel's objection to the prosecutor's questioning on cross-examination and (we assume) to the prosecutor's "conspiracy" reference in closing argument—"'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 617, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766, 66 S.Ct. 1239, 1253, 90 L. Ed.2d 1557 (1946).

We conclude that the error was harmless. As the district court of appeal remarked, "[t]he questions [put to Wilson on cross-examination] cannot possibly vitiate the entire eight-day trial, and they did not change the physical evidence of multiple stab wounds suffered by Pope. 880 So.2d at 1289. The same is true with respect to the prosecutor's comments in closing argument.

Accordingly, the district court's decision denying Wilson habeas corpus relief is,

AFFIRMED.

6